*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0773**

Johnny L. Moore, et al.,
Appellants,

vs.

Park Nicollet Methodist Hospital, et al.,
Respondents.

**Filed March 9, 2015
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-CV-10-19720

Thomas F. Handorff, Handorff Law Offices, P.C., St. Louis Park, Minnesota (for appellants)

William L. Davidson, Paul C. Peterson, Eric J. Steinhoff, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Larkin, Judge.

## U N P U B L I S H E D   O P I N I O N

**LARKIN**, Judge

Appellants challenge the district court's summary judgment on their medical-malpractice action, arguing that the district court abused its discretion by allowing

respondents to amend their answer to include a statute-of-limitations defense. Appellants also argue that they are entitled to summary judgment on the issue of liability. Because the district court did not abuse its discretion in allowing the amendment and because appellants' action is barred under the applicable statute of limitations, we affirm the summary judgment.

## FACTS

Appellant Johnny Moore sustained injuries in January 2006, when he fell during a post-surgery hospitalization at respondent Park Nicollet Methodist Hospital. On January 15, 2010, Moore and his wife served Park Nicollet with a summons and complaint, alleging that the fall occurred on January 15, 2006, and that Park Nicollet was negligent. Park Nicollet answered the complaint, generally denying that Mr. Moore sustained a fall. Park Nicollet did not assert a statute-of-limitations defense in its answer.

In July 2010, Park Nicollet moved to dismiss the Moores' complaint for failure to comply with the expert-identification requirements of Minn. Stat. § 145.682 (2008). In its supporting memorandum, Park Nicollet referred to Minn. Stat. § 541.076(b) (2008), which provides a four-year statute of limitations for negligence actions against health care providers and noted that the Moores filed their complaint "on January 15, 2010—the day the four-year statute of limitation expired." Park Nicollet did not argue that the Moores' suit was barred under the statute of limitations.

Park Nicollet filed a supplemental reply memorandum in support of its dismissal motion, along with a supplemental attorney affidavit. The attorney affidavit included portions of Mr. Moore's medical records as an exhibit. The records include several

progress notes indicating that Mr. Moore slipped and fell the night of January 1, 2006.[1] Park Nicollet quoted from these records and referenced details about Mr. Moore's fall, but it did not note the discrepancy between the date of the fall alleged in the complaint (January 15, 2006) and the date documented in the medical records (January 1, 2006). The Moores cited the same medical records in their memorandum opposing Park Nicollet's dismissal motion. They also did not note the discrepancy.

The district court granted Park Nicollet's motion and dismissed the Moores' complaint with prejudice for failure to comply with expert-affidavit requirements. The Moores appealed, and this court reversed and remanded, concluding that expert testimony was not necessary and that section 145.682 therefore did not apply. *Moore v. Park Nicollet Methodist Hosp.*, No. A11-591, 2011 WL 6306658, at *3 (Minn. App. Dec. 19, 2011).

During discovery on remand, Park Nicollet realized that Mr. Moore fell and suffered his injuries on January 1, 2006, two weeks earlier than the date alleged in the complaint. As to why the correct date of Moore's fall was not discovered until 2013, one of Park Nicollet's attorneys stated that he did not receive Moore's medical records until February 10, 2010, a week after serving Park Nicollet's answer and that he "did not have an opportunity to review the entire 2,600 plus page record" at that time.

---

[1] For example, a note dated January 1, 2006, states that Moore was found "sitting on [the] floor in [the] bathroom" and said that he had "slipped backing up" but "did not fall on [his] incision or hip." A note dated January 2, 2006, states that Moore "had [a] fall apparently late last [night]. While getting up, [he] slipped and fell. Eval[uated] by house resident last [night,] felt to be normal."

In May 2013, Park Nicollet's attorneys asked the Moores if they would agree to allow Park Nicollet to amend its answer to assert a statute-of-limitations defense. The Moores' attorney refused, believing that "[t]he affirmative defense ha[d] been waived." The same day, Park Nicollet moved the district court for leave to amend its answer to include a statute-of-limitations defense and for summary judgment. In its supporting memorandum, Park Nicollet described the complaint's allegation that the fall occurred on January 15 as "a direct misstatement of fact" and asserted that "[t]here is clear, undisputed and overwhelming evidence that the parties are now aware this incident occurred at night on January 1." Park Nicollet cited the same medical records that were included with the attorney affidavit supporting its July 2010 motion to dismiss. Park Nicollet also cited the Moores' September 2012 answer to an interrogatory, which quoted those same hospital records, and an additional medical record that indicated the fall occurred sometime before January 2, 2006. The Moores opposed both motions, arguing, in part, that Park Nicollet "has clearly waived the statute of limitations affirmative defense" because "at all times relevant, [Park Nicollet] had in its possession complete control and custody of [Moore's] medical file."

In November 2013, the district court granted Park Nicollet's motion to amend its answer but denied its motion for summary judgment. The district court concluded that "justice require[d]" it to allow Park Nicollet to amend and that the Moores had failed to show that they would be prejudiced by the amendment. Regarding summary judgment, the district court stated that the motion was "premature" because "the statute of limitations defense [was] not yet properly before the Court." Three days later, Park

4

Nicollet filed an amended answer that "affirmatively allege[d] that [the Moores'] claims are barred in whole or in part by the applicable statute of limitations."

Shortly thereafter, Park Nicollet moved for summary judgment, arguing that the Moores' claims are "time-barred under the four-year medical malpractice statute of limitations." Park Nicollet asserted that the case "never should have been brought" given the expiration of the statute of limitations and that "but for the misstatement [in the complaint], this case would have been dismissed long ago." In opposing Park Nicollet's request for summary judgment, appellants once again argued that Park Nicollet "ha[d] clearly waived, relinquished and abandoned a statute of limitations affirmative defense." They also argued that it would be "inequitable, unfair and unjust" to grant Park Nicollet's request for relief. The Moores moved for partial summary judgment on the issue of Park Nicollet's liability.

The district court granted Park Nicollet's motion for summary judgment and dismissed the Moores' lawsuit with prejudice, concluding that it was untimely. The district court denied the Moores' motion for partial summary judgment on Park Nicollet's liability, reasoning that it was unnecessary to reach that issue given the statute-of-limitations ruling. The Moores appeal.

**D E C I S I O N**

**I.**

After a responsive pleading is served, "a party may amend a pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Minn. R. Civ. P. 15.01. But leave should not be given if doing

5

so "would result in prejudice to the other party." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "The [district] court has wide discretion to grant or deny an amendment, and its action will not be reversed absent a clear abuse of discretion." *Id.* A district court abuses its discretion if its decision contravenes "logic and facts on the record," is "arbitrary or capricious," or is based on "an erroneous view of the law." *Posey v. Fossen*, 707 N.W.2d 712, 714 (Minn. App. 2006) (quotation omitted).

The Moores offer several arguments in support of their contention that the district court should not have granted Park Nicollet leave to amend its answer to include the statute-of-limitations defense. None persuades us that the district court abused its discretion by allowing the amendment.

The Moores initially argue that the district court should not have allowed the amendment because Park Nicollet waived the statute-of-limitations defense by not including the defense in its original answer. The district court rejected the Moores' waiver argument, relying on *Oreck v. Harvey Homes, Inc.*, which states that "even if a statute of limitations defense is not properly pleaded in the answer, the trial court has broad discretionary powers to permit a party to amend its pleading." 602 N.W.2d 424, 427 (Minn. App. 1999), *review denied* (Minn. Jan. 25, 2000).

A party seeking to raise the statute of limitations as an affirmative defense must specifically plead that defense. Minn. R. Civ. P. 8.03; *Rhee v. Golden Home Builders, Inc.*, 617 N.W.2d 618, 621 (Minn. App. 2000). Failure to do so results in a waiver of the defense. *Rhee*, 617 N.W.2d at 621. However, no waiver occurs if the party amends its pleading to include the affirmative defense. *See Rehberger v. Project Plumbing Co., Inc.*,

295 Minn. 577, 578, 205 N.W.2d 126, 127 (1973) ("A failure to plead an affirmative defense, without later amendment of the pleading, waives the defense."); *Oreck*, 602 N.W.2d at 427. Accordingly, Park Nicollet's failure to include the statute-of-limitations defense in its original answer did not preclude it from obtaining leave of the court to amend the answer to include the defense. *See Rhee*, 617 N.W.2d at 621 ("Pleadings may be amended to assert an affirmative defense.").

The Moores also raise the doctrine of laches and imply that it should prevent Park Nicollet from raising the statute-of-limitations defense at this stage in the litigation. The district court rejected the Moores' reliance on the doctrine of laches, reasoning that laches "prevents the assertion of a stale claim, not a defense." *See* Minn. R. Civ. P. 8.03 ("In a pleading to a preceding pleading, a party shall set forth affirmatively . . . laches . . . and any other matter constituting an avoidance or affirmative defense.").

"Laches is an equitable defense," which discourages "stale demands." *Ryan v. Minneapolis Police Relief Ass'n*, 251 Minn. 250, 255, 88 N.W.2d 17, 21 (1958). Under the equitable doctrine of laches, "when one sits on one's rights for too long a time, that person's *claim* should be estopped from continuing because it would be inequitable to require the *defendant* to fight the suit." *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999) (emphasis added). The Moores do not provide legal authority or argument that persuades us that they may rely on the doctrine of laches to avoid a statute-of-limitations defense.

Lastly, the Moores argue that they were prejudiced by the amendment. Prejudice to the party opposing a motion to amend is a "major consideration" in the district court's

decision. *McDonald v. Stonebraker,* 255 N.W.2d 827, 830 (Minn. 1977). "Ordinarily, unless a party opposing an amendment can establish some prejudice other than merely having to defend against an additional claim or defense, an amendment will be allowed." *Envall v. Indep. Sch. Dist. No. 704*, 399 N.W.2d 593, 597 (Minn. App. 1987), *review denied* (Minn. Mar. 25, 1987). "Although an adverse decision on the merits is obviously prejudicial, prejudice is a question of fundamental fairness. Prejudice may be demonstrated by lack of notice, procedural irregularities, or lack of a meaningful opportunity to respond to the motion." *Bradley v. First Nat'l Bank of Walker, N.A.*, 711 N.W.2d 121, 128 (Minn. App. 2006). Other relevant factors are "the stage of the proceedings," whether a "substantial delay will result," and whether the amendment will "accomplish nothing, such as when the amendment does not state a cognizable legal claim." *Envall*, 399 N.W.2d at 597.

The Moores assert that Park Nicollet's amendment caused them "severe," "harsh," "brutal," and "unjust" prejudice. The only prejudice they identify is Park Nicollet's assertion of the statute-of-limitations defense and its attendant request for summary judgment. Ordinarily, having to defend against an additional defense is inadequate prejudice to preclude amendment. *See id.* Moreover, the district court noted that Park Nicollet's "statute of limitations defense was made known to the Moores before the close of discovery." Although the district court granted leave to amend, it denied Park Nicollet's immediate request for summary judgment. The district court's approach allowed the Moores time to conduct discovery regarding the statute-of-limitations defense and to prepare for summary-judgment proceedings.

8

This court recently opined that a district court does not abuse its discretion by allowing an amendment when the opposing party will have time to conduct discovery regarding the amendment and "does not identify any way in which he was prejudiced." *Monson v. Suck*, 855 N.W.2d 323, 326 n.2 (Minn. App. 2014), *review denied* (Minn. Dec. 30, 2014). *Larson v. State*, 451 N.W.2d 213 (Minn. App. 1990), is also instructive. In *Larson*, this court considered whether the district court erred by permitting the defendant to amend its answer to include a statute-of-limitations defense three years after the action was commenced. *Id.* at 216. We noted that the plaintiff made "no showing of prejudice" and that the district court "continued discovery for two months and rescheduled the hearing on the motion for summary judgment in an effort to lessen the possibility of prejudice to [the plaintiff.]" *Id.* Under the circumstances, the district court committed "no error." *Id.* The circumstances here are like those in *Larson*, and we similarly discern no error.

The Moores suggest that the timing of the amendment is fundamentally unfair, and therefore prejudicial, given the extensive pre-amendment litigation in this case. But the Moores share responsibility for the delay and any unnecessary litigation. The district court was "troubled" by the fact that the Moores did not explain "why January 15, 2006 was the date alleged in the Complaint." We similarly are troubled by the Moores' failure to ascertain the correct date of injury within the limitations period. At oral argument to this court, the Moores acknowledged that they did not obtain the necessary medical records before the statute of limitations expired, and they do not allege that Park Nicollet

prevented them from doing so. Under the circumstances, the amendment was not fundamentally unfair.

In sum, the district court did not abuse its discretion by allowing Park Nicollet to amend its answer to include the statute-of-limitations defense.

**II.**

"A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio*, 504 N.W.2d at 761. "[Appellate courts] review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted).

The Moores' only argument against the district court's summary dismissal of its lawsuit is that the district court "would not have granted Park Nicollet's motion for summary judgment but-for the fact that it allowed Park Nicollet to amend its answer." The Moores reiterate their contention that Park Nicollet "waived its affirmative defense." We have concluded that the district court did not abuse its discretion by granting Park Nicollet leave to amend and further discussion of that issue is unnecessary.

"An action by a patient or former patient against a health care provider alleging malpractice . . . must be commenced within four years from the date the cause of action

10

accrued." Minn. Stat. § 541.076(b) (2014). For purposes of section 541.076, "health care provider" includes hospitals. Minn. Stat. § 541.076(a) (2014). "When a medical-malpractice claim is based on a single act of allegedly negligent conduct rather than a course of treatment, the cause of action accrues when the plaintiff sustains damage from the act." *Mercer v. Andersen*, 715 N.W.2d 114, 120 (Minn. App. 2006).

The Moores do not dispute that Mr. Moore fell and sustained the injuries that are the basis for their lawsuit on January 1, 2006. Their medical-malpractice action therefore accrued on January 1, 2006, and the four-year statute of limitations under section 541.076(b) expired on January 1, 2010. The Moores served Park Nicollet with their summons and complaint two weeks later on January 15, 2010. *See* Minn. R. Civ. P. 3.01(a) ("A civil action is commenced against each defendant . . . when the summons is served upon that defendant. . . ."). The district court therefore did not err by concluding that the Moores' action is barred under section 541.076(b). We therefore affirm the summary dismissal of the Moores' lawsuit against Park Nicollet based on the statute of limitations. Given our affirmance, the Moores' remaining argument that the district court should have granted them partial summary judgment on the issue of liability is moot, and we do not address it. *See Isaacs v. Am. Iron & Steel Co.*, 690 N.W.2d 373, 376 (Minn. App. 2004) ("[A]n issue may be dismissed as moot if an event occurs that . . . renders it impossible to grant effective relief."), *review denied* (Minn. Apr. 4, 2005).

**Affirmed.**

11